**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**John Malcolm COBB, IV,
Defendant-Appellee.**

**No. 1418, Docket 82–1126.**

United States Court of Appeals,
Second Circuit.

Argued Aug. 12, 1982.

Decided Dec. 20, 1982.

Edward J. Wagner, Buffalo, N.Y., for defendant-appellee.

J. Glenn Davis, Asst. U.S. Atty. W.D. N.Y., Buffalo, N.Y. (Roger P. Williams, U.S. Atty. W.D.N.Y., Buffalo, N.Y., Patty Merkamp Stemler, U.S. Dept. of Justice, Washington, D.C., of counsel), for plaintiff-appellant.

Before VAN GRAAFEILAND, PIERCE and PRATT, Circuit Judges.

GEORGE C. PRATT, Circuit Judge:

Only one issue is presented on this appeal: whether Judge Curtin erred in refusing to exclude from the speedy trial calculation 27 days between defendant's oral motion to suppress evidence and the date other periods of excludable delay took effect. If that time is not excluded from the calculation, then as Judge Curtin held, the Speedy Trial Act's 70-day limit for bringing defendant to trial was exceeded, and the indictment was properly dismissed. If that time is excluded, as the government contends it must be, then the allowable 70-day time period did not expire, and dismissal of the indictment was improper.

## FACTS

On July 2, 1981 defendant John Malcolm Cobb, IV, having been previously convicted of a felony, was arrested while entering the United States from Canada by agents of the Bureau of Alcohol, Tobacco and Firearms who found a gun and ammunition in his truck. Cobb was taken before a United States magistrate who released him on bail. Nearly two weeks later, on July 15, 1981,[1] the grand jury returned an indictment charging him with interstate transportation of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1).

On July 27 Cobb appeared again and was arraigned by the magistrate, who granted him an "ends of justice" continuance pursuant to § 3161(h)(8) of the Act to permit him to retain an attorney. Ultimately, the magistrate assigned counsel to Cobb on September 9 and excluded from the speedy trial calculation the 45 days between arraignment and assignment of counsel.[2]

The problem underlying this appeal began on October 27, 1981 when counsel appeared at the first status conference before Judge Curtin. After asking that a trial date be set, Cobb's attorney said,

> * * * and I also, your Honor, would like to orally make a motion to suppress Mr. Cobb's statement and I ask that we have a hearing on that, and I wonder if because Mr. Cobb is out of town, if we could schedule the hearing and then go from the hearing into trial, if trial is necessary.

App. at 13.[3] When the government did not object to the suggested procedure, the court scheduled jury selection for November 23,[4] indicating that it would then set a convenient time for trial. Because Cobb was an over-the-road trucker the court sought to accommodate his schedule, and it granted permission for Cobb to absent himself from the jury selection and appear only for the trial. The government's attorney asked if "the suppression hearing would be held at that time when he appears for trial." The court responded, "When he came for trial, we would have the hearing." Cobb's attorney agreed to the arrangements, indicating, "[t]hat is fine, your Honor." App. at 15.

Counsel next appeared before Judge Curtin on November 23, 1981, the date scheduled for jury selection. Because Cobb was sick and unable to go to trial, the court postponed the suppression hearing until January 5, 1982, ruling that the period from November 23 to January 5 was excludable time attributable to Cobb's hospitalization. In addition, Cobb's attorney moved to dismiss the indictment, claiming a violation of the Speedy Trial Act. After an evidentiary hearing, Cobb's motion to suppress was denied on January 5, and the court asked for further briefs on the speedy trial issue. The remaining time until dismissal of the indictment on March 11, 1982, 535 F.Supp.

1. Judge Curtin ultimately found this date to start the "speedy trial clock", and his finding is not disputed.

2. This exclusion is not in dispute.

3. In suggesting that the suppression hearing be deferred until immediately before the trial, defendant's attorney was requesting a useful procedure that is properly and frequently followed by many district judges.

4. "A trial in a jury case shall be deemed to commence at the beginning of *voir dire.*" Revised Plan for Prompt Disposition of Criminal Cases for the Western District of New York § 4(e)(3).

112, was excluded because of the pending speedy trial motion. The parties agree that the time from November 23 to dismissal of the indictment is all properly excluded. They disagree over whether the pending pretrial motion to suppress evidence required exclusion of the 27-day period from October 27 to November 23.

Judge Curtin granted defendant's motion to dismiss. Noting that the exclusion of § 3161(h)(1) applies to "any period of delay resulting from pretrial motions", App. at 8, Judge Curtin pointed out that the suppression motion had not "occasioned any delay of the trial" but that instead, "the delay was due to an error in computation on the part of the United States Attorney", an error which was due to "mere inadvertence" and which did not indicate any bad faith on the part of the government. *Id.* at 9. Finding the remedy for violation of the Act to be clear, the court dismissed the indictment with prejudice.[5]

As presented by the government, "the sole issue in this appeal concerns the speedy trial status of a 27-day period between October 27, 1981, the day on which defendant Cobb moved to suppress his post-arrest statements, and November 23, 1981, the day on which the suppression hearing was postponed due to Cobb's illness." Reply brief at 1. The government argues that the plain language of the statute, its legislative history, and the applicable case law, all support an "automatic" exclusion for pending pretrial motions and militate against the causation analysis adopted by Judge Curtin.

Defendant relies heavily on the Revised Plan for Prompt Disposition of Criminal Cases for the Western District of New York which, he contends, grants the trial judge discretion to determine whether the pendency of a particular motion should be excluded from the time calculation. Relying also on the specific language of the Act, and some references to the legislative history, defendant argues that the causation analysis by the court below is supported by common sense and good judgment.

## DISCUSSION

Under the Speedy Trial Act, 18 U.S.C. §§ 3161–3174, a defendant is entitled to have the charges against him dismissed if he is not brought to trial within 70 days, unless the excess days are excluded from the time computation. §§ 3162(a)(2), 3161(c), and 3161(h). Authorized exclusions are listed in § 3161(h). Our task is to determine whether the time during which defendant's suppression motion was pending must be excluded from the speedy trial calculation under subsection (F) of § 3161(h)(1).

We begin, of course, with the language of the statute. Section 3161(h) now provides

(h) The following periods of delay shall be excluded in computing the time within which * * * the trial * * * must commence:

(1) Any period of delay resulting from other proceedings concerning the defendant, including but not limited to—

\*　　\*　　\*　　\*　　\*　　\*

(F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of such motion * * * *

18 U.S.C. § 3161(h)(1)(F)["(F)"].

As originally enacted in 1974 the pretrial motion exclusion was far more limited than under the 1979 amendment quoted above. It applied to "delay resulting from hearings on pretrial motions". That language was expanded in 1979 "to avoid an unduly restrictive interpretation of the exclusion as extending only to the actual time consumed in a pretrial hearing." H.Rep. No. 96–390, 96th Cong., 1st Sess. 11, *reprinted in* 1979 U.S.Code Cong. & Ad.News 805, 815. Recognizing the wide potential of the 1979 expanded language, the House committee intended that excessive and abusive use of the pretrial motion exclusion "be precluded

---

**5.** While the dismissal was "with prejudice", Judge Curtin does not appear to have recorded how he considered the factors described in

§ 3162(a)(1). Nevertheless, no challenge is made to that aspect of his decision, and we have not reviewed it.

by district or circuit guidelines, rules, or procedures relating to motions practice." *Id.* The Senate Report had noted that "if basic standards for prompt consideration of pretrial motions are not developed, this [1979] provision could become a loophole which could undermine the whole Act." S.Rep. No. 96–212, 96th Cong., 1st Sess. 34 (1979) [1979 Senate Report].

With these legislative reservations in mind we address the question of whether under (F) all time during which a pretrial motion is pending must be excluded automatically from the speedy trial calculation. Our analysis of the statute focuses upon the separate concepts of subsection (F).

1. *"Delay resulting from".*

██ Defendant argues, and Judge Curtin below held, that in order to be excludable under (F) a pretrial motion must cause a delay in the trial. The government disagrees, urging that once it is determined that a pretrial motion has been filed, the statute automatically excludes from the speedy trial calculation all time during which the motion remains pending, which in this case would be the entire period from October 27, when the suppression motion was made, to January 5 when the hearing was held.

The theory that the time consumed by a proceeding should be excludable from the speedy trial calculation only if it caused a delay in the trial is at least superficially reasonable. The fundamental purpose of the Speedy Trial Act was to require expeditious disposition of criminal cases. Congress rejected an approach of granting broad discretion to district judges to be exercised within general guidelines, and instead adopted the structure embodied in the statute, specifying a period of time within which trial must commence, but permitting exclusions from the calculation in an attempt to accommodate the many and varied problems that particular cases might generate. Congress's repetitious use in § 3161(h) of the words "delay resulting from" suggests that exclusions were to be granted only to proceedings which actually delayed commencement of a trial.

An examination of the legislative history discloses, however, that Congress's approach was intended to be more delicate, more subtle, and more efficient than requiring a factual determination of causation before a particular time period would be excluded. Throughout its report on the 1979 amendments the Senate committee repeatedly used the term "automatic" in referring to the excludable delay provisions of subsections 1 through 7 of § 3161(h). Under the heading "AUTOMATICALLY EXCLUDABLE DELAY [§ 3161(h)(1–7) ]", the Senate committee reported that against the fixed time limits which were necessary to assure speedy trial protections to the individual and society,

> the Congress also saw the need to build into those fixed limits sufficient flexibility to make compliance with them a realistic goal. In computing the time within which an information or indictment must be filed or the time within which a trial must commence, the Act excludes from either computation specific and recurring periods of time often found in criminal cases.

1979 Senate Report, *supra* at 9. Later in the report the committee notes:

> § 3161(h)(1) currently provides that periods of delay consumed by the following are to be automatically excluded.

*Id.* at 33. Among the periods of time referred to is (F), relating to pretrial motions.

Congress "made a conscientious effort to set forth with reasonable particularity the types of delay which, it hoped, would be excluded as a matter of practice consistent with the objectives to be served by the Act." In detailing the categories of excludable delay the Congressional committees took pains "to be instructively particular." *Id.* at 10. The committee also noted that the change made by the 1979 amendment "with respect to the automatic exclusions for pretrial motions in (h)(1)(F) is an appropriate subject for circuit guidelines" which should "set uniform standards for motion practice." *Id.* at 34.

Finally, while the 1974 Act was under consideration Representative Conyers, chairman of the House Subcommittee on Crime, wrote to Representative Rodino, chairman of the House Committee on the Judiciary, referring to a criticism by the Attorney General that the legislation "is directed to the symptoms of delay and fails to address the causes." Representative Conyers' comment was as follows:

Ironically, the Senate Judiciary Committee, when faced with the same allegation, concluded that it would be "irresponsible" to recommend legislative solutions to any perceived "causes" of delay without a more comprehensive analysis of the speedy trial problems of each of the federal judicial districts, as provided in sections 3166 through 3169 of the Speedy Trial Act. For example, the Committee's report explicitly states that "Congress could not at the present time resolve the delay problem by adopting specific criminal procedure reform proposals."

Furthermore, the hearings conducted by the Subcommittee on Crime graphically illustrate the total lack of agreement among criminal justice practitioners as to the "causes" of delay. Prosecutors blamed backlogged court dockets and judges blamed prosecutors for filing indiscriminate, multi-count indictments. For their part, prosecutors and defense counsel alike found the dilatory tactics of their adversaries as a principal cause of delay.

H.Rep. No. 93–1508, 93d Cong., 2d Sess. 56, *reprinted in* 1974 U.S.Code & Cong. Ad. News 7401, 7448.

From the legislative history two things are clear. One is that Congress did intend the various classifications of excludable delay in §§ 3161(h)(1–7) to be invoked automatically upon proof that the proceedings were pending. The other is that the "delay" referred to is not of the trial itself, but instead of the final date on which the trial must commence. In other words, Congress

did not seek to determine the reality of whether or not a particular proceeding interfered with the commencement of trial;[6] it used the word "delay" to denote a period of time during which the speedy trial clock would be stopped and the expiration of the 70-day period thereby postponed. By this means, Congress sought to structure a method of calculating time which would be reasonably and practically, although not necessarily directly, related to the just needs for pretrial preparation in a particular case.

Consequently, we reject Judge Curtin's causation analysis and accept the proposition urged by the government that excludable time under §§ 3161(h)(1–7) is automatically triggered once the existence of the proceeding or condition referred to in a particular subsection is established.

2. *"Any pretrial motion".*

▮ Is a motion to suppress a "pretrial motion" within the meaning of (F)? The answer is "yes". Because it is an objection or request which is capable of determination without trial of the general issue, a motion to suppress has been expressly classified by Congress as a "pretrial motion". Fed.R.Crim.P. 12(b)(3).

Congress could have attacked the many problems raised by the different varieties of pretrial motions and given separate consideration to them. Wisely, it avoided such a morass and extended the exclusion to "any pretrial motion", without distinguishing among them. Defendant argues that a distinction in speedy trial classification should be made between those motions that require significant effort before trial and those that are wisely postponed until at or very near trial. Appellee's brief at 13. Such a distinction is precluded, however, because the statute applies to "any" pretrial motion. Rather than subdivide the class of pretrial motions, Congress instead placed limits on the amount of time excludable under that classification, and to these limits we now turn.

6. This question frequently would pose more difficult issues than the trial itself and in some

cases would be simply impossible to determine.

### 3. *"From the filing of the motion".*

█ This language fixes the beginning point of the excludable time. It also raises the question of whether the use of the term "filing" precludes an oral motion from qualifying as an exclusion under (F).

No motion papers were filed here; instead, when on October 27, 1981 he first appeared before the court, defendant's attorney stated that he "would like to orally make a motion to suppress Mr. Cobb's statement and I ask that we have a hearing on that." App. at 13.

Even though the motion to suppress was made orally and was not on papers that could be "filed", it nevertheless was a "pretrial motion" to be calculated under (F). Rule 12(b) of the Federal Rules of Criminal Procedure permits motions to be written or oral at the discretion of the judge. In its Guidelines to the Administration of the Speedy Trial Act of 1974, the Administrative Office of the United States Courts fixes the starting date for an exclusion under (F) as the "date the motion is filed or made orally." Issuance No. 30, at 33. Moreover, 18 U.S.C. § 3501, which relates to determining voluntariness before admitting a confession in evidence, left open, by not specifying, the manner, orally or in writing, by which the issue of voluntariness may be raised. We conclude, therefore, that an oral motion to suppress made on the record in advance of trial is a "pretrial motion" that has been "filed" within the meaning of subsection (F).

### 4. *"Through the conclusion of the hearing on, or other prompt disposition of, such motion".*

█ It is the ending of the period of excludable delay that presents the major problems on this appeal. Congress provided that the period should end with the "hearing or other prompt disposition" of the motion. "Hearing" presents no difficulty; it refers to the taking of evidence or oral argument or both. "Other prompt disposition" is ambiguous and requires examination of more legislative history. To begin with, Congress's language in (F) must be interpreted in conjunction with § 3161(h)(1)(J)["(J)"], which excludes time up to 30 days during which a pretrial motion "is actually under advisement by the court." *See* 1979 Senate Report, *supra,* at 33–34. Congress intended that the time between making the motion and finally submitting it to the court for decision be governed by (F), and that the time during which the court has the motion "actually under advisement" be governed by (J). *United States v. Bufalino,* 683 F.2d 639 (2d Cir.1982).

(J)'s exclusion would ordinarily begin when the delay authorized by (F) ceased. But not all motions follow the same course. Some can be decided from the bench after hearing and, thus, require no "under advisement" time. Others might be submitted without a hearing, and if they are simple, Congress clearly intended that they be decided quickly. If they require more time, up to 30 days may be automatically excluded under (J), and if more than 30 days are needed for proper decision on a difficult motion, an "ends of justice" continuance under (h)(8) is available on proper findings.[7] In any event, from the committee discussions it is clear that Congress's use of the term "other prompt disposition" did not refer to a decision made after having the matter "actually under advisement" under (J). Rather, the "disposition" referred to is the point at which the matter is presented or submitted to the court for decision.

In this connection the Senate Committee's report is instructive:

This later language ["other prompt disposition"] is intended to provide a point at which time will cease to be excluded, where motions are decided on the papers filed without hearing. In using the words "prompt disposition", the committee intends to make it clear that, in ex-

---

7. Subsection (h)(8) provides for a more flexible period of delay based upon a continuance granted by the trial court when "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." No issue based on an "ends of justice" continuance is before us and we need discuss this provision no further.

cluding time between filing and disposition on the papers, the Committee does not intend to permit circumvention of the 30-days, "under advisement" provision contained in Subsection (h)(1)(J). Indeed, if motions are so simple or routine that they do not require a hearing, necessary advisement time should be considerably less than 30 days. *Nor does the Committee intend that additional time be made eligible for exclusion by postponing the hearing date or other disposition of the motions beyond what is reasonably necessary.*

1979 Senate Report, *supra,* at 34 (emphasis added).

In this case the suppression hearing was held roughly three months after defendant's motion was made. The government's position is essentially that the making of the motion triggered a period of excludable time that did not terminate until the hearing. This argument ignores, however, Congress's intent in including the additional termination point of "other prompt disposition" of the motion. As noted above in the Senate Committee report, there was no intent that "additional time be made eligible for exclusion by postponing the hearing date [of a motion] beyond what is reasonably necessary." *Id.*

In addition, the government's interpretation would in many circumstances render the Act meaningless. Underlying the exclusions of the Act is an assumption that in the usual situation the time requirements of a pretrial motion will directly affect when a case can reasonably be ready to go to trial. Yet frequently with suppression motions and occasionally with other motions, a final determination is deliberately and for sound reasons postponed until immediately before or even during trial, whenever the trial may occur. In such cases, the usual situation is reversed, and the trial will be scheduled without regard to the motion which will be heard and decided at whatever time the trial may be scheduled. To automatically exclude the interim time period for such motions would run directly contrary to the legislative scheme for obtaining speedy trials.

Thus, Congress's intent was to require trials within 70 days after excluding certain defined periods of delay. On a pretrial motion Congress intended to exclude under (F) only such time as was reasonably necessary for the fair processing of the motion. We conclude that the period of allowable excludable delay applicable to a pretrial motion begins automatically with the making of the motion and runs for a period of time that is "reasonably necessary" to conclude a hearing or to complete the submission of the matter to the court for decision. Under this view, long postponements of hearing dates, unless reasonably necessary, would not qualify as excludable time, nor would unnecessarily long extensions of time for the submission of papers.

Since he applied a legal standard different from the one enunciated above, Judge Curtin below did not make a finding as to whether the period of delay between the making of the motion and the holding of the suppression hearing was reasonably necessary for processing the motion. Nor can we now make that determination, because the record before us does not disclose what factors induced Judge Curtin to defer the suppression hearing until after jury selection.

The four week period from October 27, when the suppression motion was made, to November 23, when the trial was adjourned to January because of defendant's illness, does not seem inordinately long, particularly when defendant himself was unavailable on October 27, and his attorney specifically requested that the hearing take place just before the trial. We do not know how soon after October 27 defendant would have been available, nor do we know how soon after that he became ill and, therefore, unavailable again. It may also be that such factors played no significant part in the court's mind when it scheduled the hearing. In any event, these and perhaps other considerations as well should be weighed and balanced by the district judge who must in the first instance determine whether under all the circumstances the period of delay

was reasonably necessary for processing the motion. This conclusion requires us to reverse and remand to the district court for that purpose.

Our analysis is consistent with *United States v. Brim,* 630 F.2d 1307, 1312 (8th Cir.1980), where the Eighth Circuit concluded, as we do, that the period of time from the filing of a pretrial motion until it is actually taken under advisement by the court is automatically excluded under (F). However, consideration of the pretrial motions in that case, unlike disposition of the suppression motion herein, had not been postponed until a later date. Rather, the time period between Brim's overlapping filing of several pretrial motions and the court's actual consideration of the motions was "reasonably necessary" for the fair processing of the motions and was thus excludable.

Our analysis is also consistent with our recent opinion in *United States v. Bufalino,* 683 F.2d 639 (2nd Cir.1982), where we rejected defendant's claim of a speedy trial violation. We accepted there the government's contention that a pending motion by the government to sequester the jury warranted exclusion from the speedy trial calculation of all the time between March 27, when the motion was filed, until October 19, when the motion was decided immediately before trial. *Id.* at 645. Without discussing the point, we assumed an automatic exclusion of time for the pretrial motion.

The problem in *Bufalino* was that after the government made the motion, neither of the defendants responded to it. Even after the judge reminded defense counsel three weeks before trial that they had not responded to the motion, they still requested more time to consult. Finally, the motion was decided on the very day of the trial, once defendants' positions on the motion were made clear.

The delay calculated under (F) was reasonably necessary, however, because, as the *Bufalino* opinion noted, "Judge Duffy could not have taken this motion under advisement in any meaningful way until the de-

fendants made their positions known." *Id.* We pointed out that the volume of criminal litigation in courts such as the Southern District made it unreasonable to require clerks or judges to guess each party's position on his adversary's motions in order to calculate times under the Speedy Trial Act. While we recognized that defendant had no duty to bring himself to trial and that the responsibility for pursuing a prosecution lies entirely with the government, we also noted the need to "insure the ability of the courts to administer the Act", and we stated that "if defendants do not make their positions known in response to the motions that are made, neither the court nor its clerk's office will ever know when the 'under advisement' period of subsection (J) begins to run." *Id.* at 646. As a result, a period of more than six months attributable to the motion to sequester was held to be excludable under (F). *Id.*

That decision fits within our present analysis, since Bufalino's failure to respond to the government's motion rendered the interim time period "reasonably necessary" for proper processing of the motion. Therefore, exclusion of the entire period, from the making of the motion until its decision on the day of trial, was proper under the statute.

We recognize there are circumstances which may reasonably and properly require that consideration of a particular motion be deferred. For example, a motion to change venue may sometimes best be decided after the government's evidence is presented at trial. Or, as in this case, consideration of the evidence bearing on a motion to suppress a confession may sometimes most economically and expeditiously be heard immediately before trial, or even during trial, when the appropriate witnesses are available. Or as in *Bufalino,* even if defendants had promptly responded to the motion to sequester the jury, the court might well have properly concluded that such a motion could best be decided in light of conditions prevailing at the time of trial rather than six months in advance thereof. A district judge may of course control the timing of

such motions to fit the needs of a particular case. When that is done, however, the period from the court's deferral of the motion until its actual hearing or submission would not be automatically excludable under (F). Instead, if the trial judge should find that the period of delay is not reasonably necessary for processing the motion, then no excludable time would be allowed. On the other hand, should the judge find that all or part of the interim period is reasonably necessary, he would so determine and, in addition, decide how long an exclusion would be appropriate to the circumstances.[8]

### CONCLUSION

We reject Judge Curtin's causation analysis which would require that to be excludable under (F) a particular pretrial motion must have caused an actual delay in the commencement of the trial. We accept, instead, the government's view that a pretrial motion triggers an automatic exclusion, with the qualification, however, that the amount of time eligible for exclusion may not be extended by postponing the hearing date or other disposition of the motion beyond what is reasonably necessary for processing the motion.

Since Judge Curtin did not determine whether the delay of Cobb's suppression hearing was reasonably necessary under the particular circumstances of this case, the matter must be remanded to him for that essential determination.

The order appealed from is, therefore, reversed, and the case is remanded for further proceedings consistent with this opinion.

---

8. We do not mean to suggest that a specific determination must be made on each pending motion as to whether the time involved is reasonably necessary to bring it to hearing or other prompt disposition. Most motions will expeditiously follow the normal sequence: service of moving papers, service of answering papers, hearing if needed, argument, and decision, and will thereby qualify for (F)'s automatic exclusion without further analysis.