98

UNITED STATES of America,
Plaintiff,

v.

James Andrew CAMP and Susan Thorne
Camp, Defendants.
Cr. No. 11015.

United States District Court
D. Hawaii.
April 17, 1956.

E. D. Crumpacker, Asst. U. S. Atty.,
Honolulu, T. H., for plaintiff.

A. W. Barlow and William K. Amona,
Honolulu, T. H., for defendants.

EDWARD P. MURPHY, District
Judge.

This is an indictment in thirteen counts of James Andrew and Susan Thorne Camp, for concealing assets of a number of bankrupt estates, a viola-

tion of 18 U.S.C. § 152. The question before the court is a motion for judgment of acquittal pursuant to Fed.Rules Crim. Proc. rule 29, 18 U.S.C.A. The Rule provides that a judgment of acquittal shall be ordered as to one or more of the offenses charged in the indictment after the evidence on either side is closed "if the evidence is insufficient to sustain a conviction of such offense or offenses." There was some reference by counsel for the government on the argument of this motion to the state of the evidence "at least for the purposes of this motion." Counsel for the government thus suggests that the evidence ought to be viewed, for the purposes of this motion, according to the test whether the evidence is insufficient to sustain a conviction. This case, however, is a criminal case tried to the court without a jury, jury trial having been waived by both parties. The motion for judgment of acquittal, therefore, logically goes beyond the test of whether the evidence is sufficient to *sustain* a conviction by the trier of fact. Where the court is the trier of fact, the test to be applied to the evidence produced by the government is not whether it *could* sustain a conviction, but whether the government has so far substantiated its case, that absent a defense the court *would* find the defendant guilty as to any of the counts of the indictment.

A contrary rule, one adopting the intimation of the government, would put upon the defendant the risk that by his own evidence, as by testimony produced on cross-examination, he might supply the evidence which convinces the trier of fact of his guilt, where absent such evidence the trier of fact would not be so convinced. To subject the defendant in a criminal case to such a risk would be contrary to the principles by which the criminal law has developed in this country. It would in effect require the defendant to assist in providing a vital element of the evidence which convicts him.

The question before this court upon this motion, therefore, is not whether the evidence is substantial enough to warrant submission of the case to a jury, but whether the government has met its full burden of proof, that of showing beyond a reasonable doubt the guilt of the accused.

▮ Before discussing the evidence, it may be well to turn briefly to the law governing this case. Counsel for the defendants argued that in order for the crime described in 18 U.S.C. § 152 to be committed, there must be assets of the bankrupt estate. So much is undisputed. Counsel for defendants further argued, however, that "assets" of a bankrupt estate must be construed to mean that property which is ultimately determined to be the property of the bankrupt estate, as against the claims of other persons. According to this argument, where a bankrupt secretes a sum of money from his creditors or from the Trustee, and the money is subsequently recovered, and it is decided that the sum involved belongs as of right to some other claimant rather than to the bankrupt estate, the bankrupt has committed no crime. This proposition does not seem to correspond to the intent of Congress in providing sanctions for the enforcement of the Bankruptcy Act. Defendants' argument in this respect is not convincing, and no cases have been cited to the court, or found, in which defendants' argument was sustained on this point.

▮ Defendants' argument was made also more narrowly, to the effect that at least property held in trust by the defendants for others could not be the property "belonging to the estate of a bankrupt", 18 U.S.C. § 152, and thus could not be the subject of concealment prohibited by 18 U.S.C. § 152. In this argument, defense counsel seems to have ignored the character of the evidence adduced. The evidence showed that funds received by the corporations and the defendants here involved were not segregated in trust funds, or trust accounts in banks, or otherwise held in such a manner as to amount to a trust, but on the contrary either commingled with other funds in general accounts or cashed and commingled with other cash. De-

fense counsel argued that the accounting concept of "assets" was not determinative of the question of whether any property which may have been concealed was "property belonging to the estate of a bankrupt." This argument, though true, goes only to the distinction between what may appear on an accounting analysis of the bankrupt estates as "assets" and the net worth of the bankrupt estates after the liabilities have been offset against the "assets." It is a far cry from the proposition that net worth may be less than the accounting concept of "assets" to the conclusion that any assets on an accounting statement which are counterbalanced by liabilities to other parties are *ipso facto* assets held in trust for such other parties. The government has adequately shown that the assets in question were "property belonging to the estate of a bankrupt."

■ So far as the government's legal theory is concerned, it relied to some extent on the proposition that improper expenditures of the funds of the bankrupt estates, such as the payment of personal obligations of the bankrupt by means of funds of the bankrupt estates, were in themselves concealment of property belonging to the estate of the bankrupt. That is not the law. In United States v. Tatcher, 3 Cir., 1942, 131 F.2d 1002, at page 1003, emphasis added, the court made clear that where the evidence justified equally an inference that the property in question was concealed and an inference that the property in question was "sold and the proceeds used to pay the business *and personal* expenses of the defendant and his partner", a conviction was not justified. The crime of concealment is concealment. It is not an improper use of funds, it is not the use of corporate funds for personal expenses, it is not even the use of funds in fraud of creditors. These manipulations of funds may be the basis of private civil obligations, they may be grounds for denial of discharges in bankruptcy, they may be evidence of a scheme or conspiracy to defraud creditors, and they may be evidence of a concealment from the Trustee or the creditors. As such evidence they are entitled to some weight. But they are not in themselves the crime alleged in the indictment. In a case dealing with a bankrupt accused of concealing his property, in which the evidence showed large gifts of property by the bankrupt immediately preceding the bankruptcy, Judge Goodrich, for the Third Circuit, said:

"It may well be within the power of Congress to declare that one who, within the shadow of the approaching specter of bankruptcy, gives away his assets may be guilty of a crime. But it is neither the crime of concealment nor false swearing with regard to assets on hand at the time the bankruptcy occurs." United States v. Schireson, 3 Cir., 1940, 116 F.2d 881, 884, 132 A.L.R. 1157.

Profligate expenditure of money stolen, in either the legal or the moral sense, from the creditors of a bankrupt is not concealment of such money, and it is only concealment that is charged in the indictment.

■ The evidence introduced by the government of the use of funds of the corporate bankrupt estates to satisfy private obligations of the defendants, whether these were garbed in the form of business expenditures or not, is therefore entitled only to that weight which it may have as evidence of a concealment of other funds, which it may be inferred from the evidence were abstracted from the bankrupt estates.

■ The government also seemed to argue that the use of funds belonging to the bankrupt estates in running the businesses after the date of bankruptcy, and while the defendants were continuing, under the supervision of the Trustee, in the operation of the businesses, was in itself unlawful. It may be pointed out that at least some of these expenditures were made in pursuance of the activities of the defendants sanctioned by the Trust. Cf. Hersh v. United States, 9 Cir., 1934, 68 F.2d 799. But beyond that,

it is clear that once again, any *expenditures* of money, proper or not, can be considered only insofar as they may be evidence of *concealment* of other funds derived from the businesses. This conclusion is not contrary to the principle that once concealment has been practiced, the concealment may not thereafter be purged of its criminality by the use of the previously concealed property for the benefit of others. See Kalin v. United States, 5 Cir., 1924, 2 F.2d 58. The gravamen of the offense in any case is *concealment.*

So much for the legal theories argued on this motion. The question to be determined by this court is whether the government has proved beyond a reasonable doubt that defendants are guilty as charged, absent some defense which they may or may not be prepared to make. This question is a different one from whether this court would allow a finding of guilt by a jury considering this evidence to stand, or whether this case, in its present state of the evidence, would go to a jury. The citation of cases in which the circumstances resembled those of this case, and in which courts of appeal refused to disturb the verdict of the jury of guilty, are therefore of only limited value. See e. g. United States v. Rosenberg, 2 Cir., 1944, 145 F.2d 653; United States v. Shapiro, 7 Cir., 1939, 101 F.2d 375. It may be supposed that the defense could likewise marshal cases in which, on similar circumstances to the ones at bar, juries, acting with equal reasonableness, acquitted the defendants there accused.

The evidence introduced during the course of the trial of case, on the thirteen counts contained in the indictment, was massive. Fifty-two exhibits were introduced into evidence, including the general books of account, such as they are, of the bankrupt corporations managed by defendants. More than two dozen witnesses testified. It would serve little purpose to rehearse the evidence here. It may be well to say at the outset that on a number of the counts in the indictment, the court deems it more probable than not that the defendants did in fact conceal the property of the bankrupt estates, including the estate of the bankrupt Susan Thorne Camp, knowingly and fraudulently, from the Trustee and creditors. If this were a civil case, to be tested by a standard of greater likelihood, or preponderance of the evidence, the defendants would be found to have concealed property of the bankrupt estates. But this is not a civil case. It is a criminal case in which the evidence has been largely, as it must be in cases of this nature, circumstantial. In such cases, juries are instructed that if there is a reasonable inference to be drawn from the evidence which is consistent with the innocence of the defendants, they must acquit the defendants. A judge can do no less.

The distinction of the two states of mind, that of a conviction of the greater probability of the existence of a crime, and that of a conviction beyond a reasonable doubt of the existence of a crime, is one upon which Anglo-Saxon jurisprudence prides itself. It is a safeguard to the liberty of the individual which is one of the great accomplishments of a free legal system. That it is occasionally invoked in defense of unworthy defendants detracts nothing from its merit as a principle of freedom under law.

I cannot say, as to any of the counts in the indictment, that the evidence excludes every reasonable inference of the innocence of the defendants of the crime charged in the indictment. The motion for judgment of acquittal will therefore be granted. Having come to this conclusion, I think it necessary to say, however, with Judge Learned Hand, see United States v. Weissman, 2 Cir., 1955, 219 F.2d 837, 841, that I should not be understood to commend the financing and business methods practiced by the Camps; if they were not in fact designed fraudulently to conceal property from future creditors in bankruptcy, they were nevertheless well adapted to that end. The defendants at the very least robbed Peter to pay Paul, and probably robbed both Peter and Paul.

Nevertheless, the punishment they may deserve is one thing, and whether they have been proved guilty of the crime charged in the indictment, under the strict standard applicable to criminal cases, is another. The motion for judgment of acquittal is granted. This constitutes the court's opinion in this case and also its findings of fact and conclusions of law.