HENLEY, Senior Circuit Judge.
 

 Appellant Jim Turner was convicted of one count of transferring or concealing property with the intent of defeating the bankruptcy laws in violation of 18 U.S.C. § 152. He appeals, arguing that the district court
 
 [1]
 
 erred in limiting his questioning of a witness, in refusing to give a requested jury instruction, and in several other respects. We affirm.
 

 Turner owned most of the stock in and was employed by a corporate car dealership in Camden, Arkansas. In 1979 the dealership ran into financial problems, and in January, 1980 the corporation filed for reorganization under Chapter 11 of the Bankruptcy Code. On February 11,1980 Turner sold a Ford Thunderbird to one Bill Joiner, who ran Westside Auto Sales at New Boston, Texas. At Turner’s request, the price, $6,500.00, was paid in currency. The sale was not recorded in any of the dealership’s records. Within a few months questions arose about the sale of the Thunderbird. The trustee for the corporation questioned the corporation’s attorney, Ike Scott, who in turn spoke with Turner about the car. Turner told Scott that he had paid some creditors with the money from the sale. Scott relayed the information to the trustee. The trustee, apparently dissatisfied with Turner’s answers, informed the United States Attorney. After an investigation by the F.B.I., Turner was indicted for violating 18 U.S.C. § 152.
 

 Section 152 makes it illegal, inter alia, for an agent or officer of a corporation knowingly and fraudulently to transfer or conceal the property of the corporation with intent to defeat the provisions of the bankruptcy laws. The indictment charged that Turner did “knowingly and fraudulently transfer and conceal property of [the] bankrupt corporation, that is a 1980 Ford Thunderbird automobile.”
 

 In defense, Turner testified that he had paid some $2,000.00 to the contractor who had rebuilt the service building after a fire, some $2,700.00 to one Dick Mosley who had loaned Turner money to invest in the car dealership, and the rest to various small creditors.
 

 I. HEARSAY.
 

 Turner’s first argument concerns the testimony of Ike Scott, the car dealership’s attorney. Turner testified that he informed Scott about the payments made with the proceeds from the Thunderbird sale. Scott testified for the defense that he informed the trustee of the substance of Turner’s statement, but the district court refused to allow him to testify about what Turner’s explanation was.
 

 The district court’s ruling would have been correct had Scott’s testimony about Turner’s statement clearly been offered solely to prove the truth of Turner’s statement. Fed.R.Evid. 801(c); see
 
 United States v. Marin,
 
 669 F.2d 73, 84 (2d Cir.1982). In other words, it was not admissible to show what Turner had done with the proceeds of the sale of the Thunderbird. However, the testimony was admissible to show that Turner had attempted to account for the money. In a prosecution for intentional concealment of assets, the fact that
 
 *1157
 
 the defendant explained or attempted to explain what he did with the money is important.
 
 See Marin,
 
 669 F.2d at 84. The record can be read as reflecting that Scott’s testimony was offered to show that a full explanation had been given; that it was the fact of the explanation rather than the explanation itself that Turner sought to show by Scott’s testimony.
 
 See United States v. Conley,
 
 523 F.2d 650, 654-55 (8th Cir.1975),
 
 cert. denied,
 
 424 U.S. 920, 96 S.Ct. 1125, 47 L.Ed.2d 327 (1976).
 

 However, in this case we find the error, if any, harmless. Turner testified fully as to what he told Scott. Scott was allowed to testify that Turner had accounted to him for the money, and that he (Scott) had passed on that information to the trustee. The jury was thus made aware that Scott had provided the trustee with Turner’s explanation, and we consider that the point was made clearly enough so that the alleged exclusionary error was harmless beyond a reasonable doubt.
 

 II. JURY INSTRUCTIONS.
 

 Turner also contends that the jury instructions did not correctly state the law. Turner argues that the court erred in refusing to give an instruction that “concealment” does not include using the funds of a corporate debtor to pay corporate and personal debts. The district court gave only a general instruction on the meaning of “concealment”:
 

 Concealment means, not only secreting, falsifying and mutilating as specified in section 1 of the Bankruptcy Act but also includes preventing discovery, fraudulently transferring or withholding knowledge or information required by law to be made known.
 

 The district court correctly defined “concealment.” Clearly concealment means more than “secreting”; one does not have to put something in a hidden compartment, a safe, or a hole in the backyard in order to “conceal” it. It is enough that one “withholds knowledge,” or “prevents disclosure or recognition.” Webster’s Third New International Dictionary (1971).
 

 Thus, Turner is focusing on the wrong facts. It may or may not be concealment to use corporate funds to pay corporate or personal debts; it depends on whether one conceals what one did with the money. In this case, the concealment came, not from paying the debts, but from the withholding of information. The evidence in this case showed that the sale of the Thunderbird was not recorded anywhere in the corporation’s books. Nor did anyone else connected with the car dealership know what had been done with the proceeds. It was by his failure to account for the corporation’s property that Turner concealed it, or so a jury could have found.
 
 [2]
 

 The cases cited by Turner are each quite different from this case. In
 
 United States
 
 v.
 
 Camp,
 
 140 F.Supp. 98 (D.Hawaii 1956), the court noted in dicta that “[t]he crime of concealment is concealment. It is not an improper use of funds, it is not the use of corporate funds for personal expenses, it is not even the use of funds in fraud of creditors.”
 
 Id.
 
 at 100. We do not think our holding here is inconsistent with the holding in
 
 Camp.
 
 The court in
 
 Camp
 
 held that more than improper use of corporate funds was required to find concealment, and in this case there is more: Turner’s failure to account for the money. Further,
 
 Camp
 
 was not a jury case. The court expressly noted that it was not deciding whether the evidence before it was sufficient to sustain a jury verdict; rather, it came before the court on the question of whether the evidence was sufficient to convince the court, as the trier of fact, beyond a reasonable doubt of the defendant’s guilt.
 
 Id.
 
 at 101.
 

 United States v. Tatcher,
 
 131 F.2d 1002 (3d Cir.1942), is also a different case.
 
 Tatcher
 
 involved the- disappearance of corporate assets in the two and one-half month period before an involuntary petition in bankruptcy was filed. In this case the assets were concealed after the petition was filed.
 

 
 *1158
 
 Finally, Turner relies upon
 
 Hersh v. United States,
 
 68 F.2d 799 (9th Cir.1934). In
 
 Hersh,
 
 the debtor ran his business for two months after filing a petition for bankruptcy until the trustee took over. He had some bank accounts which were not listed on his schedule of assets, but testified that he had used those funds to run the business. The court held that he was entitled to an instruction that he had a right to conduct his business and to purchase goods and expend money in the course of that business.
 
 Id.
 
 at 803. However, the court stressed the “good faith” requirement inherent in this instruction, and expressly found that all the creditors of the corporation knew of the unlisted bank accounts.
 
 Id.
 
 at 805. Further, it is clear from the court’s discussion of the facts that careful records of the bank accounts had been kept by the debtor’s attorney and bookkeeper. In this case no one knew what Turner had done with the money, or even thgt Turner had the money.
 

 The purpose of a Chapter 11 reorganization is to preserve a viable business enterprise where possible.
 
 In re Huntington Ltd.,
 
 654 F.2d 578, 589 (9th Cir.1981). This purpose could not be fulfilled if there was no one with the power and authority to run the business. This power is vested in the trustee, 11 U.S.C. § 1108, or, if no trustee has been appointed, in the debtor in possession. 11 U.S.C. §§ 1107(a), 1101(1). However, concurrent with the power to run the business is the duty to act responsibly toward creditors.
 
 Matter of Halux, Inc.,
 
 665 F.2d 213, 216 (8th Cir.1981);
 
 Matter of Hughes,
 
 704 F.2d 820, 822 (5th Cir.1983). Until a trustee was appointed, the corporate debtor in this case had an obligation to conserve and protect its property.
 
 Halux,
 
 665 F.2d at 216.
 

 We clearly are not holding that payment of corporate debts by a debtor’s agent is a crime. Without more, it is not a violation of § 152 because there has been no concealment.
 
 [3]
 
 Here, however, as discussed above, there was abundant proof of concealment, which the jury believed.
 

 Thus, we conclude that the requested instruction did not correctly state the law and should not have been given. The instructions given adequately covered Turner’s theory of the case, and the definition of concealment was correct. Further, thorough instructions were given on the government’s duty to prove beyond a reasonable doubt that Turner had acted knowingly and fraudulently, and the way the case was tried placed the issue of Turner’s good faith squarely before the jury. Attorneys for both Turner and the government focused on Turner’s credibility and on the circumstances surrounding the sale of the Thunderbird. The government stressed the absence of a record of the sale and Turner’s inconsistent statements, while Turner stressed the confusion which followed the filing for reorganization under the bankruptcy laws. The instructions as given certainly would have allowed the jury to acquit Turner had it believed his story.
 

 Turner makes other allegations of error in the jury instructions. We have read the instructions in their entirety, and in light of the evidence presented at the trial we find no error. The instructions actually given by the trial court adequately stated the law and were not confusing or misleading.
 
 United States v. Richmond,
 
 700 F.2d 1183, 1196 (8th Cir.1983). Further, Turner’s attorney at trial did not object to these alleged errors. The failure to object to jury instructions before the district court results in a waiver of the objection on appeal.
 
 United States v. Young,
 
 702 F.2d 133, 136 (8th Cir.1983).
 

 Turner next argues that the government failed to prove that Turner possessed any of the money from the sale of the Thunderbird when the trustee was appointed. We do not consider such proof necessary. As discussed
 
 supra,
 
 Turner’s crime was not in selling the car, possessing the proceeds, or using the proceeds to pay debts, but rather in preventing the dis
 
 *1159
 
 covery, by the trustee or the corporate debtor, of what he had done with the car and the money. Thus, it was not an element of the crime that Turner had possessed the money at the time the trustee was appointed.
 

 III. BRADY.
 

 Next Turner argues that the government failed to turn over exculpatory information. The “exculpatory information” is a document termed an “invoice” by the parties. This document lists the 1980 Thunderbird and its serial number and indicates that on February 11 it was sold to Westside Auto Sales for $6,500.00. Turner claims that this document would have refuted the government’s claim that there was no record of the sale of the Thunderbird.
 

 The record shows, and Turner concedes, that no specific request for the invoice was made. Nonetheless, the government does have a duty to turn over material and favorable evidence even if no request is made.
 
 United States v. Agurs, 421
 
 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976);
 
 see Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). When a court reviews the prosecutor’s failure to turn over exculpatory evidence not specifically requested, the standard is whether the information “creates a reasonable doubt that did not otherwise exist.”
 
 United States v. Agurs,
 
 427 U.S. at 112, 96 S.Ct. at 2402. This decision must be made “in the context of the entire record.”
 
 Id.
 

 In this case the evidence before the jury was virtually undisputed that the sale of the Thunderbird was not recorded in the corporation’s books. Nor was there any evidence that Mr. Turner kept or made any record of what he did with the proceeds of the Thunderbird sale. These facts were the basis for the jury’s conclusion that there had been “concealment,” as we discussed
 
 supra.
 
 The unrevealed document was an unsigned invoice which provides some indication of the sale. Thus, the existence of the invoice might raise some question over whether Turner “covered up” the sale of the car. However, it could in no way alter a jury’s conclusion that Turner had concealed what he had done with the proceeds of the sale. Further, the invoice had no corroborative value, since Turner did not testify that he filled out such an invoice, directed another employee to fill out such an invoice, or even informed another employee of the sale. Thus, while it is remotely possible that the invoice might have affected the jury’s verdict,
 
 see Brady,
 
 373 U.S. at 87, 83 S.Ct. at 1196, we cannot say that it would have created a reasonable doubt that did not otherwise exist.
 
 United States v. Agurs,
 
 427 U.S. at 112, 96 S.Ct. at 2401.
 

 IY. PROSECUTORIAL MISCONDUCT AND INEFFECTIVE ASSISTANCE.
 

 Turner also argues that prosecutorial misconduct and incompetence of his defense attorney deprived him of a fair trial. We have reviewed the entire record, including the portions of the transcript to which Turner draws our attention, and find these allegations to be without merit. While Turner may not have gotten a perfect trial, he did get the fair trial to which he was entitled.
 
 Lutwak v. United States,
 
 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953). '
 

 V. SPEEDY TRIAL ACT.
 

 Turner’s last argument is that the Speedy Trial Act requires vacation of his conviction and dismissal of the charges. The Speedy Trial Act requires that a criminal defendant be tried within seventy days of arraignment. 18 U.S.C. § 3161(cXl). Turner was arraigned on June 28, and the parties agree that the seventy day period began to run on that date. Trial was held on December 20, more than one hundred fifty days later. On July 7 the government filed a motion to discover the defense of alibi and a motion for disclosure of evidence. Turner responded to the latter on September 27 and the former on November 2. Thus, from July 7 to November 2 pretrial motions were pending. The issue is whether this period should be excluded from the seventy days maximum.
 

 
 *1160
 
 The Act provides that periods of delay resulting from pretrial motions are excluda-ble. 18 U.S.C. § 3161(h)(1)(F). This court held in
 
 United States v. Brim,
 
 630 F.2d 1307, 1311 (8th Cir.1980), that ordinary pretrial motions like those here are automatically excludable.
 

 Turner urges us to “refine” our holding in
 
 Brim
 
 by adopting a rule allowing only for exclusion of the time “reasonably necessary” to dispose of the motion, not the time actually taken.
 
 United States v. Cobb,
 
 697 F.2d 38, 44 (2d Cir.1982).
 

 We need not reach the issue presented by Turner since we find that even if we adopted the
 
 Cobb
 
 rule, it could not apply here. The
 
 Cobb
 
 court explicitly noted that in some cases the district court will not be able to act until the defendant has taken a position,
 
 Cobb,
 
 697 F.2d at 45, and in such cases the time “reasonably necessary” includes all the time taken by the defendant in making his position known. The court cited
 
 United States v. Bufalino,
 
 683 F.2d 639 (2d Cir.1982),
 
 cert. denied,
 
 - U.S. -, 103 S.Ct. 727, 74 L.Ed.2d 952 (1983), in which the government made a motion to sequester the jury. The defendants did not respond or otherwise make their position known for almost seven months. The court held that a defendant, “when faced with a government motion, had a duty to do more than stand by without taking a position and then reap the benefit of inaction.”
 
 Bufali-no,
 
 683 F.2d at 646;
 
 see United States v. Stafford,
 
 697 F.2d 1368, 1373 (11th Cir. 1983). We agree, and find that to be the case here. The district court frequently may not act on motions to discover the defense of alibi or for discovery of evidence until a party objects or otherwise responds in such a way as to alert the court to the problem, if there is one...
 
 [4]
 

 We hold that the entire period from July 7 to November 2 should be excluded as delay caused by pretrial motions. Excluding other noncontroverted periods, Turner was tried well within the time limits established by the Act.
 

 We find no merit to any of Turner’s charges of error. The judgment of conviction is therefore affirmed.
 

 [1]
 

 . The Honorable Oren Harris, United States Senior District Judge, Eastern and Western Districts of Arkansas.
 

 [2]
 

 . Thus, the district court did not err in denying Turner’s motion for acquittal.
 

 [3]
 

 . We do not speak to whether Turner’s actions in selling the car and paying creditors, which may have violated the debtor’s duty to preserve the rights of the creditors, were “transfers” in violation of § 152.
 

 [4]
 

 . The court in
 
 Bufalino
 
 cautioned the government about its willingness to “stand silent” during defense delays.
 
 Bufalino,
 
 683 F.2d at 646. We agree with the Second Circuit that “a defendant’s failure to respond to a motion within a reasonable time should be brought to the court’s attention” by the government.
 
 Id.