**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 20 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

SAMUEL BRUCE LOVE,

      Defendant - Appellant.

No. 00-6083
(D.C. No. 98-CR-164-R)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO** and **McKAY**, Circuit Judges, and **BROWN**,[**] District Judge.

---

    Appellant Samuel Bruce Love appeals from his convictions for conspiracy,

18 U.S.C. § 371, concealment of the assets of a bankruptcy estate, 18 U.S.C.

§§ 152 & 2, and embezzlement against a bankruptcy estate, 18 U.S.C. §§ 153

(1993) & 2. The parties are familiar with the facts, or at least with their

---

    [*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

    [**] The Honorable Wesley E. Brown, Senior District Judge for the United States District of Kansas, sitting by designation.

respective competing versions, thus we need not set them forth here.[1]  Exercising

jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

## I

Love first argues that the district court erred in refusing to dismiss the

indictment or, alternatively, that the court erred in refusing to grant his motion for

judgment of acquittal.[2]  In support of this contention, Love asserts that the

evidence was insufficient to prove the alleged offenses were committed or that

Love conspired to commit the offenses, that counts 3 and 4 were barred by the

statute of limitations, and that the evidence was insufficient to support

convictions on counts 5–10 under 18 U.S.C. § 153 (1993).

---

[1]  Love acknowledges the "voluminous trial record [that] will be cumbersome for this Court to review" and expresses a "fear" that it would be "easy . . . for this Court to make a simple statement that it has reviewed the evidence and that Mr. Love's conviction is sustained by the evidence." (Appellant's Reply Br. at 1–2.)  Although the record is certainly voluminous, it is by no means prohibitive of our meaningful review of this appeal.  We painstakingly reviewed the record, as we always do, and although our written disposition may be brief it does not reflect the amount of judicial time and effort dedicated to our ultimate determination.

[2]  The jury found Love guilty, and the district court entered judgment, on the following counts of the indictment:  count 1, conspiracy to commit bankruptcy fraud in violation of 18 U.S.C. § 371; count 3, aiding and abetting concealment of $270,000 of the bankruptcy estate in violation of 18 U.S.C. §§ 152 and 2; count 4, aiding and abetting concealment of $38,000 of the bankruptcy estate in violation of 18 U.S.C. §§ 152 & 2; and counts 5 ($20,000), 6 ($9519.13), 7 ($32,275.31), 9 ($10,000), and 10 ($5000), aiding and abetting embezzlement against the bankruptcy estate in violation of 18 U.S.C. §§ 153 (1993) & 2.

Generally, we review the grant or denial of a motion to dismiss an indictment for an abuse of discretion, United States v. Wood, 6 F.3d 692, 694 (10th Cir. 1993); however, when the sufficiency of a charge is challenged we review the district court's decision de novo, United States v. Wood, 958 F.2d 963, 974 (10th Cir. 1992). Similarly, we review the district court's ruling on a motion for judgment of acquittal and the sufficiency of the evidence to support such judgment de novo. United States v. McKissick, 204 F.3d 1282, 1289 (10th Cir. 2000). We inquire "'only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" Id. (quoting United States v. Hanzlicek, 187 F.3d 1228, 1239 (10th Cir. 1999)). The scope of our review is limited; we may "'neither weigh conflicting evidence nor consider the credibility of witnesses.'" Id. (quoting United States v. Pappert, 112 F.3d 1073, 1077 (10th Cir. 1997)). "Defendants challenging a conviction on sufficiency of the evidence grounds face a difficult standard of review as we reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Spring, 80 F.3d 1450, 1459 (10th Cir. 1996) (citations and quotations omitted). We will not, however, uphold a conviction "obtained by nothing more than piling inference upon inference or where the evidence raises no

more than a mere suspicion of guilt." United States v. Rahseparian, 231 F.3d 1257, 1262 (10th Cir. 2000) (citations and quotations omitted). Finally, we review de novo the district court's determination regarding the applicable statute of limitations. Laurino v. Tate, 220 F.3d 1213, 1216 (10th Cir. 2000).

We conclude that a reasonable trier of fact could have found the essential elements of the offenses and could have found that Love conspired to commit the alleged offenses beyond a reasonable doubt. With regard to the conspiracy charges, there was direct evidence that Love was aware of the plan to commit bankruptcy fraud and willingly agreed to participate in that plan. Cf. Rahseparian, 231 F.3d at 1262–64 (reversing appellant's convictions for conspiracy to commit mail and wire fraud because there was no direct evidence of appellant's knowledge of the fraud and the circumstantial evidence of knowledge presented was not sufficient for a reasonable jury to find knowledge beyond a reasonable doubt). James Ray testified at trial that Love participated in the meeting at which the First Assurance & Casualty Company ("FACC") principals discussed what to do with the Sphere Drake refund and determined to transfer the $270,000 refund to a Panamanian account. He further testified that the meeting participants were explicitly made aware of the possibility that such a transfer may be bankruptcy fraud. We can not second-guess the jury's assessment of Ray's

credibility. His testimony was direct evidence of Love's knowledge of and participation in the conspiracy to commit bankruptcy fraud.

Similarly, the evidence at trial was sufficient to support the charges of and convictions for concealment of the assets of a bankruptcy estate under 18 U.S.C. § 152 and for embezzlement or transfer of the assets of a bankruptcy estate under 18 U.S.C. § 153 (1993). Section 152 makes it unlawful for any person to "knowingly and fraudulently conceal[] . . . in connection with a case under title 11, from creditors . . . any property belonging to the estate of a debtor." 18 U.S.C. § 152(1) (emphasis added). Section 153 makes it unlawful for certain individuals to "knowingly and fraudulently . . . embezzle[] . . . or transfer[] any property . . . belonging to the estate of a debtor." 18 U.S.C. § 153 (1993).[3] The counts of concealment and embezzlement were supported by, among many other facts, the following: Ray's testimony that the participants in the meeting discussing the Sphere Drake refund voiced their intent to conceal the $270,000 from the bankruptcy estate, the odd method in which the $270,000 refund was received from Sphere Drake,[4] the substantial evidence presented at trial that Love

---

[3] The Court is aware of the amendments to 18 U.S.C. § 153 that occurred in October 1994, and of the fact that Love was charged under the earlier version of that statute. The effect of those amendments is discussed later in this order and judgment.

[4] The refund was first sent to Maynard's Kansas home payable to his company, "Advisor Associates, Inc.," then to an account of "Asset Protection Services Corporation" in Panama, then finally to an Impact III ("Impact") account

was a principal of FACC (specifically the chief financial officer), testimony that Love helped prepare the bankruptcy reports by providing relevant information (see, e.g., VII Trial Tr. at 1159, 1172, 1184, 1214 (Testimony of John Patterson, FACC's Bankruptcy attorney)), testimony that Love was directly informed by FACC's bankruptcy attorney of the operating requirements of the bankruptcy court (id. at 1167), the delayed reporting to the bankruptcy court of the transfers of FACC funds to Impact accounts, the fact that the transferred FACC funds were almost entirely depleted by the time the Impact "assets" were consolidated into the bankruptcy estate, and the misrepresentations to the bankruptcy court of the nature of the transfers of FACC funds (e.g., deeming transfers of funds as "reimbursements" or "reimbursements" as "consulting fees"). A reasonable jury could have concluded, beyond a reasonable doubt, that the principals of FACC, and specifically Love, transferred money to accounts of FACC's alter ego, Impact, in order to conceal FACC's property from its creditors and/or that such transfers were fraudulent.[5]

in Oklahoma.

[5] Love cites United States v. Turner, 725 F.2d 1154 (8th Cir. 1984), in support of the assertion that the "mere transfer of assets is insufficient to sustain a conviction for bankruptcy fraud" and that the government must prove "intent to conceal." (Appellant's Br. at 22.) Turner, however, supports Love's conviction because it upholds a broad interpretation of "concealment." In Turner, the Eighth Circuit affirmed the district court's instruction on the meaning of "concealment," concluding that "concealment means more than 'secreting'; . . . [i]t is enough that one withholds knowledge, or prevents disclosure or recognition." Id. at 1156

We also affirm the district court's conclusion that counts 3 and 4 involved concealments and were "continuing offenses for which the limitation period does not begin to run until the final discharge or denial of discharge." 18 U.S.C. § 3284. Love's argument that the counts involved transfers, not concealments, fails because FACC did not relinquish control of the assets transferred to Impact accounts, or at least there was sufficient evidence for a reasonable jury to arrive at that conclusion. See In re Brown, 108 F.3d 1290, 1293 (10th Cir. 1997) ("There is little question that if an individual transfers title of an item but continues to exercise dominion over it, that fraud could be inferred."). As the bankruptcy court concluded in its July 29, 1994, order holding that FACC and Impact were alter egos, "Impact . . . had no source of income other than monies received from [FACC], . . . the finances of the two entities were commingled, . . .

---

(quotations omitted).

In this case, the fact that the transfer of FACC funds to Impact was disclosed does not overcome the finding that assets were concealed. Disclosure of the transfers was incomplete and the purposes of the transfers were falsely identified. As such, the bankruptcy reports Love cites as listing the transfers actually worked to "prevent disclosure" to the bankruptcy court and to the creditors of the fact that Impact was an alter ego of FACC and that any Impact assets should have been property of the bankruptcy estate. Along the same lines, mere disclosure of the transfers of FACC assets to Impact does not prevent such transfers from being deemed "concealments" for purposes of § 152. Section 152 prohibits concealing "from creditors . . . any property belonging to the estate of a debtor." 18 U.S.C. § 152(1) (emphasis added). The disclosure of the transfers to Impact did not somehow make legal the removals of FACC assets from the bankruptcy estate. Those removals worked to "conceal" assets of the bankruptcy estate from creditors in violation of § 152.

the principals of both entities were essentially identical, and . . . Impact . . . essentially functioned as a conduit to facilitate the transfer of funds from [FACC] to insiders and other entities." In re First Assurance & Cas. Co., No. 93-16187-TS (Bankr. W.D. Okla. July 29, 1994).

We further conclude that the evidence was sufficient to support convictions for counts 5–10 under 18 U.S.C. § 153 (1993) and 18 U.S.C. § 2.[6] Although Love correctly observes that the version of § 153 in effect in 1993, when the alleged offenses occurred, required appropriation, embezzlement, spending, or transferring of property that came into one's charge as trustee or other officer of the court, he omits that he was indicted under 18 U.S.C. § 2 as well. Under § 2, whoever "aids, abets, counsels, commands, induces or procures" commission of an offense "is punishable as a principal." As Love concedes, Maynard was in the class envisioned by the prior version of § 153. (See, e.g., Appellant's Br. at 26 ("The government's evidence clearly demonstrated that Mr. Maynard may have occupied such a position with the court . . . .").) Moreover, we do not read the prior version of § 153 to require appropriation of funds to one's own use; the plain language of the statute prohibits knowing and fraudulent embezzlement,

---

[6] 18 U.S.C. § 153 (1993) states "[W]hoever knowingly and fraudulently appropriates to his own use, embezzles, spends, or transfers any property or secrets or destroys any document belonging to the estate of a debtor which came into his charge as trustee, custodian, marshal, or other officer of the court, shall be fined . . . or imprisoned . . . ."

-8-

spending, transference, etc., whether or not such activity is occasioned toward the offender's own use.

## II

Love argues that the district court abused its discretion by admitting into evidence tape recordings of conversations between an FBI agent and Love involving an unrelated investigation. We review the district court's admission of evidence for abuse of discretion, United States v. McIntosh, 124 F.3d 1330, 1338 (10th Cir. 1997), and we affirm. The district court considered the parties' arguments regarding relevance before admitting the tapes or the agent's testimony regarding the recorded conversations. The court concluded that the conversations were "very probative of Mr. Love's involvement in [FACC] o[r] . . . at least [of his] asserted position of control . . . . [His position in the company is] obviously a serious question, . . . and [in the conversations] he's offering to do some pretty big things for the company." (VII Trial Tr. at 1119–20.)[7] Accordingly, the court issued a cautionary instruction to the jury limiting their consideration of the tapes only as it pertained to Love's "position and authority with [FACC]." (Id. at

---

[7] Indeed, on appeal Love asserts he "had no influence over the affairs of the failed insurance company nor over any matters that were reported or not reported to the Bankruptcy Court" and that he was only "an independent contractor for a failed insurance company." (Appellant's Br. at 3, 4.)

1133.)  Under these circumstances, we can not conclude that the district court abused its discretion by admitting the tapes into evidence.

### III

The district court denied Love's motion for severance, and Love challenges that decision as an abuse of discretion.  United States v. Eads, 191 F.3d 1206, 1209 (10th Cir. 1999), cert. denied, 530 U.S. 1231 (2000).  In order to prevail, Love must show that actual prejudice resulted from the denial of his motion.  Id.  Because "severance is a matter of discretion and not of right, the defendant must bear a heavy burden of showing real prejudice to his case."  United States v. Petersen, 611 F.2d 1313, 1331 (10th Cir. 1979).  Love has not met this burden; after reviewing the parties' arguments and the relevant authorities, we conclude the district court did not abuse its discretion in denying his request for severance.  Our conclusion is based upon, among other facts, the district court's issuance of cautionary jury instructions to consider each count and each defendant separately (II Appellee's Supp. App. at 120–21), and the jury's ability to compartmentalize evidence as demonstrated by the acquittal of Jones on the only count charged against her and the acquittal of Love and Maynard on counts 2 and 8.  See, e.g., Zafiro v. United States, 506 U.S. 534, 541 (1993); United States v. Wacker, 72 F.3d 1453, 1468 (10th Cir. 1995); United States v. Cardall, 885 F.2d 656, 668 (10th Cir. 1989).

## IV

Love claims the evidence was insufficient to support a verdict as to any count of the indictment. We review de novo the issue of whether there was a fatal variance between the allegations of the indictment and the evidence presented at trial. United States v. Williamson, 53 F.3d 1500, 1512 (10th Cir. 1995). "A variance is fatal only when the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him or is exposed to the risk of double jeopardy." Id. at 1513 (quotation omitted). "[T]he prohibition against variances is designed to insure notice of the charges" and derives from the Sixth Amendment right that an accused "be informed of the nature and cause of the accusation." Id. at 1513, 1512 n.4.

As requested by appellant, we have reviewed the closing arguments of the government's counsel; we have also reviewed the indictment[8] and the trial record in general. The indictment made clear that the government intended to offer, as proof of the conspiracy to commit bankruptcy fraud, evidence of the management or mismanagement of FACC. (See, e.g., I Appellee's Supp. App. at 42, Superseding Indictment ¶ 18 ("It was part of the conspiracy that the defendants acquired money through the sale of insurance policies to individuals in the United

---

[8] Despite raising this variance claim, appellant did not provide us with a copy of the indictment. Under 10th Cir. R. 10.3(B) we may therefore decline to consider the issue. To assure ourselves, we nevertheless consider the claim.

-11-

States through FACC without maintaining sufficient funds necessary to pay claims of its policyholders.").)  The trial transcript reveals that there was no fatal variance between the indictment and trial.  Appellant had notice that evidence of FACC's mismanagement would be admitted at trial, and accordingly his defense was not prejudiced.

## V

During sentencing, the district court applied several upward adjustments under the Sentencing Guidelines to increase Love's base offense level.[9]  Love challenges the application of the adjustments for loss under U.S.S.G. § 2F1.1(b)(1), violation of the automatic stay in bankruptcy under U.S.S.G. § 2F1.1(b)(3)(B), and abuse of a position of trust or use of a special skill under U.S.S.G. § 3B1.3.  We review de novo the district court's interpretation and application of the Sentencing Guidelines.  United States v. Burridge, 191 F.3d 1297, 1301 (10th Cir. 1999).  We review for clear error the factual findings supporting a district court's offense level calculation and will reverse "only if we have a definite and firm conviction that a mistake has been made."  United States v. Messner, 107 F.3d 1448, 1456 (10th Cir. 1997) (quotation omitted).

---

[9]  The district court used the 1993 Sentencing Guidelines.  Therefore, all references to the Guidelines in this order and judgment are to the 1993 version.

## A. Loss: § 2F1.1(b)(1)

Sentencing Guideline § 2F1.1 provides for an increase in the base offense level dependent on the amount of loss in a crime of fraud. Application note 7 states that "loss is the value of the money [or] property . . . unlawfully taken" and that "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1, cmt. 7. The application notes also state that "the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." Id. cmt. 8. Accordingly, in Messner we concluded that where the "intended loss is greater than the actual loss resulting from [defendant's] conduct, a court will use the greater, intended loss amount for the purpose of sentencing." 107 F.3d at 1456. The district court heard testimony that the intended loss was more than $81 million.

Were we to apply Love's valuation method, taking the lesser of the value of the assets concealed or the value of the debtor's liabilities, we would nevertheless affirm the district court's application of § 2F1.1. The court heard testimony that the amount concealed in bankruptcy, including the amount associated with the conspiracy count, was upwards of $7 million. The court concluded that the $7 million figure was less than FACC's liabilities and used that number to calculate

loss for purposes of § 2F1.1. We do not conclude that the court's estimate of loss was unreasonable or clearly erroneous.[10]

## B. Abuse of Process: § 2F1.1(b)(3)(B)

Love also challenges the district court's imposition of a two-level upward adjustment to his base offense level for "violation of any judicial or administrative order, injunction, decree or process" under U.S.S.G. § 2F1.1(b)(3)(B). In <u>Messner</u>, this Court joined the Seventh, Eighth, and Eleventh Circuits and held that an enhancement under § 2F1.1(b) "is proper for defendants convicted of bankruptcy fraud." 107 F.3d at 1457. We reasoned that bankruptcy fraud involves "abus[ing] the bankruptcy process by concealing estate assets." <u>Id.</u> (quotation omitted). Although our holding in <u>Messner</u> connected the abuse of process rationale to defendant's action in seeking "protection from <u>his</u> [or her]</u> creditors under the shelter of bankruptcy," <u>id.</u> (emphasis added), we decline to limit application of the abuse of process adjustment for bankruptcy fraud to the debtor or debtor-in-possession. The jury found that Love conspired to commit bankruptcy fraud and convicted him for concealment and

---

[10] The court was not required to use the intended loss projections here because it reasonably determined that those projections were unreliable. (XVII Trial Tr. at 2688 (court stating "I just don't buy the $84 [sic] million figure").) U.S.S.G. § 2F1.1, cmt. 7 ("if an intended loss that the defendant was attempting to inflict <u>can be determined</u>, this figure will be used if it is greater than the actual loss.") (emphasis added).

embezzlement of the assets of the bankruptcy estate. See 18 U.S.C. § 2 ("whoever . . . aids [or] abets . . . is punishable as a principal."). Thus, at the very least, Love aided Maynard in violating the automatic stay and thereby abused the bankruptcy process. As such, the Messner rationale applies and the district court did not err in applying a two-level upward adjustment to Love's sentence under § 2F1.1(b)(3)(B).

### C. Abuse of Position of Trust: § 3B1.3

The final challenge Love makes is to the court's adjustment for abuse of position of trust under Sentencing Guideline § 3B1.3. "Abuse of position of trust is a sophisticated factual determination that will be affirmed unless clearly erroneous." United States v. Williams, 966 F.2d 555, 557 (10th Cir. 1992) (quotation omitted).

Application note 1 to § 3B1.3 explains that "'[p]ublic or private trust' refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature." In Williams we set forth a number of factors that can be considered in determining whether a defendant was in a

"position of trust." 966 F.2d at 557. Those factors include, but are not limited to:

> the extent to which the position provides the freedom to commit a difficult-to-detect wrong, and whether an abuse could be simply or readily noticed; defendant's duties as compared to those of other employees; defendant's level of specialized knowledge; defendant's level of authority in the position; and the level of public trust.

Id. (footnotes omitted). We evaluate whether one has abused a position of trust from the point of view of the victim. United States v. Trammel, 133 F.3d 1343, 1355 (10th Cir. 1998).

Love argues that he did not occupy a position of trust with either the insurance policy holders or the bankruptcy court and thus the enhancement for abuse of position of trust was improperly applied to him. In support of his contention that he occupied no position of trust with the policyholders he states that he never "had a single conversation or communication with a single policyholder." (Appellant's Br. at 38.) Under Williams and the application notes to § 3B1.3, such interaction is not required so long as defendant has sufficient managerial discretion. After listening to the parties' arguments both at trial and sentencing, the court explicitly found that Love occupied such a role, and we do not conclude that its finding was clearly erroneous.[11]

---

[11] In overruling Love's objection to the adjustment the court found that both Maynard and Love "were officers in insurance companies or related entities and they had certainly — I can't imagine a more significant trust relationship than the officer of an insurance company with their policyholders, and the ultimate loser in this was the policyholders." (XVII R. at 2728). The court also found that

We emphasize that the relevant trust relationship here could be either that between Love and the policyholders or Love and the bankruptcy court. Love erroneously states that the "pertinent relationship involved in the alleged crime was the relationship between the defendants and the Bankruptcy Court." (Appellant's Br. at 37.) His reading of the scope of the Guidelines is too narrow. "The determination of a defendant's role in the offense is to be made on the basis of all conduct within the scope of § 1B1.3 . . . and not solely on the basis of elements and acts cited in the count of conviction." U.S.S.G. Ch. 3, pt. B, introductory cmt. Guideline § 1B1.3(a) states that enhancements "shall be determined on the basis of . . . all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." See also United States v. Guidry, 199 F.3d 1150, 1159 (10th Cir. 1999). Thus, regardless of whether Love assumed a position of authority with the bankruptcy court, the court's finding that Love abused his position of trust with the insurance policy holders was sufficient to justify application of the § 3B1.3 adjustment. Although the bankruptcy court certainly

Maynard and Love held "positions of trust in regard to the work they were doing post-bankruptcy, and they violated that trust." (Id.)

-17-

was a "victim" of the bankruptcy fraud, the real victims were the creditors, and the creditors were the insurance policyholders.

## VI

Finally, Love challenges his sentence on the basis of the Supreme Court's decision in Apprendi v. New Jersey, holding that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). There is simply no ground for his argument because he was not sentenced in excess of any of the statutory maximums for the eight counts on which he was convicted. A district court has "broad discretion" in choosing whether to run multiple terms of imprisonment concurrently or consecutively. United States v. Johnson, 40 F.3d 1079, 1082 (10th Cir. 1994); 18 U.S.C. §§ 3584(b), 3553. Sentencing Guideline § 5G1.2(d), however, dictates that in cases where multiple terms of imprisonment are imposed, "[i]f the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment."

In Love's case, the district court calculated a total offense level under the Sentencing Guidelines of 26 and a Criminal History Category of I to arrive at an

imprisonment range of sixty-three to seventy-eight months. The longest statutory maximum for any of the eight counts on which Love was convicted was five years (i.e., sixty months). Sixty months was three months short of the lower end of the range provided by the Sentencing Guidelines. Thus, the district court sentenced Love to serve seven <u>concurrent</u> terms of sixty months and one <u>consecutive</u> term of seven months for a term near the low end provided by the Guidelines. This sentence does not run afoul of <u>Apprendi</u> because Love was not sentenced in excess of the statutory maximum term for any of the eight counts on which he was convicted.

## VII

For the reasons set forth above, we **AFFIRM**.

ENTERED FOR THE COURT


Carlos F. Lucero

Circuit Judge